**In re CONTINENTAL AIRLINES, INC., et al., Debtor.**

**UNITED STATES of America, Appellant,**

v.

**CONTINENTAL AIRLINES, INC., et al., Appellee.**

**Nos. 90–322 to 90–984.
Civ.A. No. 93–485–LON.**

United States District Court,
D. Delaware.

Jan. 9, 1997.

Patricia C. Hannigan, U.S. Attys. Office (J. Christopher Kohn, Tracey J. Whitaker, Allen L. Lear, of counsel), Wilmington, DE, Samuel R. Maizel, U.S. Dept. of Justice, Washington, DC, for Appellant.

Laura Davis Jones, Young, Conaway, Stargatt & Taylor (Christian C. Onsager, Faegre & Benson, Denver, CO, of counsel), Wilmington, DE, for Appellee.

## OPINION

LONGOBARDI, District Judge.

This matter comes before the Court on appeal from Orders of the United States Bankruptcy Court for the District of Delaware denying the United States's motion for an order directing the return of monies deposited with the Registry of the Bankruptcy Court and granting Continental's cross-motion for an order directing disbursement of the monies deposited with the Registry. [Docket Item ("D.I.") 14, at A–168 to A–174]. The matter was referred to the Honorable Mary Pat Trostle, United States Magistrate–Judge, pursuant to 28 U.S.C. § 636(b) for the purpose of obtaining a report and recommendation to aid this Court in its disposition of this matter. [D.I. 20]. The Magistrate–Judge issued her Report and Recommendation recommending affirmance of the Orders of the Bankruptcy Court. [D.I. 22]. The Government filed objections to the Report and Recommendation. This Court will therefore conduct a de novo review of the Magistrate–Judge's Report and Recommendation. 28 U.S.C. § 636(b)(1).

## I.

On December 3, 1990, Continental filed a petition for reorganization under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware. On April 16, 1993, the Bankruptcy Court entered an Order confirming Continental's Revised Second Amended Joint Plan of Reorganization ("Plan of Reorganization" or "Plan"). Prior to confirmation of the Plan of Reorganization, ten agencies of the United States filed proofs of claim against Continental. This appeal arises from the attempt by the United States to setoff certain funds the General Services Administration ("GSA") was ordered to pay to Continental in an unrelated matter against debts which Continental owed to these agencies.

In prior litigation, Continental and several other airlines commenced an administrative proceeding before the Comptroller General challenging GSA's policy and practice regarding government travel. The Comptroller General ruled in favor of the airlines, concluding that GSA had wrongfully withheld funds from the airline. GSA refused to abide by the ruling, claiming that the Comptroller General lacked constitutional authority to issue a binding decision. Consequently, the airlines filed suit in the United States District Court for the District of Columbia in *Alaska Airlines, Inc. v. Richard Austin,* 801 F.Supp. 760 (D.D.C.1992), to enforce the Comptroller's decision.

On August 11, 1992, the court ruled in the airlines favor and entered an injunction which, inter alia, ordered GSA to return money improperly withheld from the airlines. *See Alaska Airlines, Inc. v. Richard Austin,* 801 F.Supp. 760 (D.D.C.1992), *rev'd in part on other grounds,* 8 F.3d 791 (Fed.Cir.1993). Following the issuance of the injunction, the United States moved in the District Court of the District of Columbia for a stay pending its appeal. This motion was denied. The United States appealed this denial to the United States Court of Appeals for the Federal Circuit. In an Order dated February 10, 1993, the Federal Circuit also denied the United States's motion. On reconsideration, at the request of the United States, the Federal Circuit ordered GSA to pay the money withheld from Continental and three other airlines in bankruptcy proceedings into the registry of the respective bankruptcy courts rather than to the trustees. In accordance with the Federal Circuit's Order, on May 19, 1993, the United States deposited approximately $4.5 million in the Registry of the Bankruptcy Court for the District of Delaware.

On May 28, 1993, the United States moved in the Bankruptcy Court in the present action for an order directing the return of the money deposited in the Registry as a setoff against the debts owed by Continental to the various agencies of the United States that filed proofs of claims in this case. Continental opposed this motion and filed a cross-motion for disbursement of the funds. After a hearing, the Bankruptcy Court denied the United States's motion and granted Continental's cross-motion. This Court has jurisdiction over the United States's appeal from these Orders pursuant to 28 U.S.C. § 158(a).

## II.

### A.

■ As a preliminary matter, the United States objects to this Court's referral of this case to the Magistrate–Judge. Pursuant to 28 U.S.C. § 636(b), this Court assigned this case to the Magistrate–Judge for the purpose of obtaining a report and recommendation to aid this Court in its decision of this matter. The United States asserts that it is improper for a district court to refer bankruptcy appeals to a magistrate-judge.

Resolution of this issue requires an examination of the modern procedural changes in the United States Bankruptcy Court system. The previous bankruptcy law, enacted as part of the Bankruptcy Reform Act of 1978 ("BRA"), expressly prohibited the district courts from referring appeals of bankruptcy court decisions to magistrate-judges. Under that system, 28 U.S.C. § 1334(c) provided: "A district court may not refer an appeal ... to a magistrate or to a special master." This system also provided for three avenues of appeal from orders of bankruptcy judges: (1) to a panel of three bankruptcy judges; (2) to the United States district courts; or (3) directly to the courts of appeals, provided the parties agreed. *See* 1 Collier on Bankruptcy § 3.03(1)(a) (1996).

In response to the United States Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which raised doubts about the constitutionality of the bankruptcy court system established by the BRA, Congress amended the bankruptcy court system through the enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"). The BAFJA, inter alia, completely rewrote section 1334. By rewriting this section, Congress repealed the prohibition against referral to a magistrate-judge by omission. The BAFJA also reduced the ave-

nues of appeal from the order of a bankruptcy judge from three to two. Under 28 U.S.C. § 158, a party may appeal an order of a bankruptcy court (1) to a district court; or (2) to panel of three bankruptcy judges.

The United States relies on the decisions in *Minerex Erdoel, Inc. v. Sina, Inc.*, 838 F.2d 781 (5th Cir.), *cert. denied sub.nom. Baker, Smith & Mills v. Minerex Erdoel, Inc.*, 488 U.S. 817, 109 S.Ct. 57, 102 L.Ed.2d 35 (1988), and *In re Elcona Homes Corp.*, 810 F.2d 136 (7th Cir.1987) in challenging the propriety of referring this bankruptcy appeal to the Magistrate–Judge. These cases, however, are both distinguishable from the situation before the Court. In both of those cases, the district court referred the bankruptcy appeal to the magistrate-judge pursuant to 28 U.S.C. § 636(c)(1). *See Minerex*, 838 F.2d at 782 n. 1; *Elcona Homes*, 810 F.2d at 138. Under section 636(c)(1), a magistrate-judge, upon consent of the parties, "may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case, when specifically designated to exercise such jurisdiction by the district court. . . ." Thus, in both of those cases, the magistrate-judge entered the final order in the case with no consideration or review from the district court. This was found to be contrary to the language in section 158 which clearly delineates the possible routes of appeal. The Court of Appeals for the Fifth Circuit opined:

> We are firmly convinced that § 158 can and must be taken at face value. Section 158 provides an intricate, balanced, and elaborate scheme for bankruptcy appeals carefully and thoughtfully crafted by Congress. Under that scheme appeals could be taken to (i) the District Court or (ii) to a panel of bankruptcy judges. No other type or kind of appeal was recognized, acknowledged, or permitted under that scheme. . . . It is reasonable to conclude that had Congress meant for its appeals scheme to include the potential for refer-

ence to a magistrate, Congress would have expressly so provided. Congress did not do so. Congress intended for its § 158 scheme to be comprehensive and complete in itself, and the avenues which it expressly provided to be the exclusive routes for bankruptcy appeals.

*Minerex*, 838 F.2d at 786 (footnote omitted); *accord Elcona Homes*, 810 F.2d at 139.

Conversely, in this case, the referral to the Magistrate–Judge was made pursuant to section 636(b). Unlike the situations described above, the Magistrate–Judge's decision is merely advisory, and the final order will be issued by this Court after de novo review of the Magistrate–Judge's Report and Recommendation. This distinction has been found to be critical by every post-BAFJA court reviewing this issue.[1] *See Virginia Beach Fed. Sav. and Loan Ass'n v. Wood*, 901 F.2d 849, 851 (10th Cir.1990); *Hall v. Vance*, 887 F.2d 1041, 1045–46 (10th Cir.1989); *In re Apex Oil Co.*, 146 B.R. 821, 822–23 (E.D.Mo. 1992). As the Court of Appeals for the Tenth Circuit stated,

> In this case, the district court's order specifically states that the hearing before the magistrate would be advisory and that its purpose was "to further define and focus the issues on appeal." The district court explicitly reserved for itself the final decision on appeal. The district court, therefore, properly availed itself of the magistrate's assistance to hasten its handling of the case. By reserving for itself the final decision of the appeal, it avoided the error of the district court in Elcona Homes. We, therefore, must reject the . . . contention that the district court's referral was improper.

*Hall*, 887 F.2d at 1046.

This Court agrees with each of the other courts that have addressed this issue that referral to the Magistrate–Judge for an advisory report and recommendation pursuant to section 636(b) is not improper under the

---

**1.** In *Clarkson v. Cooke Sales and Serv. Co.*, 767 F.2d 417 (8th Cir.1985), a case initiated before the enactment of the BAFJA, the Court of Appeals for the Eighth Circuit commented that referral to the magistrate for a report and recommendation was improper under the BRA jurisdictional statute, 28 U.S.C. § 1334, which expressly forbade assignment to the magistrate. Because the provision relied on by the Eight Circuit was subsequently repealed by Congress, the reasoning in that case is inapposite to decision in this matter.

BAFJA bankruptcy system. Under 28 U.S.C. § 636(b)(3), this Court may assign a magistrate "such additional duties as are not inconsistent with the constitution and laws of the United States." With the deliberate repeal of the prohibition against such referrals in the BAFJA, there is no longer a conflict between the practice of referring bankruptcy appeals to the magistrate-judge and an express provision of law. Moreover, because the district court conducts a de novo review of the report and recommendation on referrals made pursuant to section 636(b), such referrals are not inconsistent with the section 158 language authorizing the district court to hear bankruptcy appeals. Accordingly, this Court concludes that it was not improper to refer this case to the Magistrate-Judge pursuant to section 636(b) for the purpose of obtaining an advisory report and recommendation to aid this Court in its decision of this matter.[2]

## B.

◼ The United States also objects that the Magistrate-Judge applied an incorrect standard of review. This argument is primarily based on the United States assertion that the right of setoff under 11 U.S.C. § 553 is a matter of law, subject to de novo review. The United States is mistaken. The Court of Appeals for the Third Circuit has clearly stated that the grant of the equitable right of setoff rests in the discretion of the court. *United States, Internal Revenue Service v. Norton*, 717 F.2d 767, 772 (3d Cir.1983). The Third Circuit opined:

> section 553 of the Bankruptcy Code neither defines "setoff" nor explains when a setoff has occurred. Thus, this provision is not an independent source of law governing setoff; it is generally understood as a legislative attempt to preserve the common-law right of setoff arising out of nonbankruptcy law.... The broad equitable discretion of courts in recognizing setoff rights defined by the common law has been carried over ... to section 553, whose language is permissive, not mandatory. "Its application, when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equality." 4 Collier on Bankruptcy ¶ 553.02, at 553–11 (15th ed.1983).

*Id.* (citations omitted); *accord In re Bevill, Bresler & Schulman Asset Management Corp.*, 896 F.2d 54, 57 (3d Cir.1990) (equitable right of setoff is permissive, not mandatory and cannot be invoked in a case where the general principles of setoff would not justify it).

◼ Moreover, the Magistrate–Judge's Report and Recommendation correctly states the standard of review for issues that arise in determining whether the United States has a right of setoff. Findings of fact by the Bankruptcy Court may be set aside only if the findings are "clearly erroneous." *See* Bankr. Rule 8013. The Bankruptcy Court's legal conclusions are subject to plenary review. *J.P. Fyfe, Inc. of Florida v. Bradco Supply Corp.*, 891 F.2d 66, 69 (3d Cir.1989); *Brown v. Pennsylvania State Employees Credit Union*, 851 F.2d 81, 84 (3d Cir.1988). Bankruptcy decisions involving the court's exercise of discretion are reviewed for abuse of discretion. *See In re Vertientes, Ltd.*, 845 F.2d 57, 59 (3d Cir.1988). Accordingly, this objection by the United States is without merit.

## C.

◼ Relying on *United States, Internal Revenue Service v. Norton*, 717 F.2d 767 (3d Cir.1983), the Bankruptcy Court held that confirmation of Continental's Plan of Reorganization vitiated the United States's setoff rights, because upon confirmation, all property of the estate vested in Continental, free and clear of any claims or interests. In her Report and Recommendation, the Magistrate–Judge agreed with the Bankruptcy Court's conclusion. The United States objected to the Magistrate–Judge's conclusion, asserting that confirmation of the Plan of Reorganization did not affect its right to setoff the funds deposited with the Registry

---

**2.** Because the referral to the Magistrate–Judge in this case was made pursuant to section 636(b), this Court offers no opinion on the propriety of referring bankruptcy appeals to a magistrate-judge for final decision pursuant to section 636(c)(1).

of the Bankruptcy Court against debts owed by Continental to the United States.

In *United States, Internal Revenue Service v. Norton,* 717 F.2d 767 (3d Cir.1983), the Internal Revenue Service sought to setoff a tax refund owed to Chapter 13 debtors against the debtors' pre-petition tax debts. The debtors' plan to pay off all of their creditors completely was confirmed by the Bankruptcy Court before the Internal Revenue Service withheld the refund. *Id.* at 774. The Court of Appeals for the Third Circuit concluded that the Internal Revenue Service was bound by the confirmed plan and not entitled to a setoff, because the plan did not expressly provide them with this right. *Id.* The Court opined:

> The provisions of a confirmed Chapter 13 plan bind the debtor and each creditor, whether or not the plan provides for the claim of a particular creditor. 11 U.S.C. § 1327(a) (1979).... Unless the plan provides otherwise, the property of the estate vests in the debtor upon confirmation and comes free and clear of any claim or interest of any creditor provided for by the plan....
>
> Here, the Bankruptcy Court gave the IRS notice and an opportunity to have its objections to the proposed plan heard, an opportunity the IRS failed to take. Upon confirmation, the IRS became bound to that plan and to the payment schedule that would satisfy its claim in full.

*Id.* The court concluded that to permit the Internal Revenue Service to retain the refund as a setoff after confirmation of a plan that did not provide them with this right "would seriously compromise the powers of the Bankruptcy Court, the capacity of the debtors' to rehabilitate, and the equitable distribution that the Bankruptcy Code is designed to foster." *Id.*

■ The only distinction between the facts of *Norton* and this case is that in *Norton* the bankruptcy petition was filed under Chapter 13, whereas in this case the petition was filed under Chapter 11. Notwithstanding this distinction, both the Bankruptcy Court and the Magistrate–Judge were correct in concluding that this case is controlled by *Norton.* The provisions governing the effect of confirmation in Chapter 11 and Chapter 13 proceedings, sections 1141[3] and 1327[4] of the Bankruptcy Code respectively, are virtually identical. Both provisions bind the debtor and all creditors. *See* 11 U.S.C. §§ 1141(d)(1), 1327(a); *see also Norton,* 717 F.2d at 774. Under both provisions, unless the plan provides otherwise, the property of the estate vests in the debtor upon confirmation and comes free and clear of any claim or interest of any creditor provided for by the plan. *See* 11 U.S.C. §§ 1141(1), 1327(a); *see also Norton,* 717 F.2d at 774. Thus, the same considerations found to be dispositive by the Third Circuit in *Norton* are equally applicable here.

Accordingly, pursuant to *Norton,* a creditor's right to setoff is extinguished by a confirmed Chapter 11 plan, unless the plan

---

**3.** Section 1141 provides:

> (a) Except as provided in subsections (d)(2) and (d)(3) of this section, the provisions of a confirmed plan bind the debtor ... and any creditor, ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.
> (b) Except as otherwise provided in the plan or in the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as otherwise provided in subsections (d)(2) and (d)(3) of this section and except as otherwise provided in the plan or in the order confirming the plan, after confirmation of a plan, the property dealt with by the plan is free and clear of all claims and interests of creditors....

Section 1141(d)(2) and (d)(3) are irrelevant for purposes of this issue.

**4.** Section 1327 provides:

> (a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan.
> (b) Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.
> (c) Except as otherwise provided in the plan or in the order confirming the plan, the property vesting the debtor under subsection (b) of this section is free and clear of any claim or interest of any creditor provided for by the plan.

explicitly preserves it. In the present case, Continental's plan did not provide the United States or any of its agencies with the right to setoff. In fact, not only does Continental's Plan fail to provide the United States with setoff rights, it expressly prohibits the United States from setting off its claims without Continental's approval. Section 14.8 of the Plan entitled "Setoffs" provides: "Each Debtor ... may, *but shall not be required to,* set off or recoup against any Claim ..., claims of any nature whatsoever which such Debtor ... may have against the holder of such Claim to the extent that such claim may be set off or recoup under applicable law...." *See* [Docket Item 10, vol. II, Exh. 9, at 112] (emphasis added). Therefore, the United States does not have the right to setoff the funds deposited in the Registry of the Bankruptcy Court for the District of Delaware against debts owed by Continental to the United States or its agencies.

Because the conclusion that the United States's setoff rights, if any, were extinguished upon confirmation of Continental's Plan of Reorganization is dispositive of the issue presented here, the Court will not address any of the additional rulings of the bankruptcy court.